## Commonwealth v. Hayes.

*Practice, Q. S.—Allowance of appeal from summary conviction.*
1. The granting of an appeal from a summary conviction lies in the discretion of the court, but this is a judicial discretion, and ordinarily an appeal should not be allowed if the petitioner has had the opportunity to present his case fully and fairly before the magistrate, unless a doubtful legal question is involved or there is something to indicate misconduct by the magistrate, or after-discovered evidence, which would justify a new trial.

*Game laws—Violation of—Right to wounded deer.*
2. A hunter who takes part in the shooting of a deer under such a state of facts that he claims the deer, which is awarded by some person agreed upon to another, in killing another deer acts at his peril, as he is not protected by the award, nor is there any existing custom recognized by the law that the person in possession of the deer at the time of its death is the one who killed it.

Petition for allowance of appeal from summary conviction. Q. S. Clearfield Co.

*John C. Arnold*, District Attorney, for Commonwealth.

*Pentz & Pentz*, for defendant.

BELL, P. J., Jan. 4, 1923.—The defendant was arrested on complaint of Game Warden Davis, charged with having killed two male deer in one season. Hearing was had before Justice Chorpening, who found the defendant guilty and fined him $100 and costs, whereupon he presented his petition to the court, asking the allowance of an appeal. The petition shows that the defendant admits killing a deer on Dec. 3, 1921, and also avers that he took part in the killing of a deer on Dec. 1, 1921, as to which deed he avers that it had been previously fatally shot by Leo McKnight and was on the ground, held there by McKnight, when he shot it through the brain to stop its suffering; he further asserts that after the deer died and was in possession of McKnight "a dispute arose between James Diana, one of the prosecuting witnesses, your petitioner and Leo McKnight as to who was to be credited with the killing of the deer, and it was decided by one John A. Keating, on the understanding of all the parties present and by the custom among the hunters in deer hunting, that the person who has possession of the deer at the time of its death is the person to whom the deer belongs;" he practically avers, though not in plain terms, that the deer was awarded to Leo McKnight, and

also avers that, relying on this decision and this custom of deer hunters, he continued hunting, and killed a deer on Dec. 3rd, and he alleges that the undisputed evidence in the case was to the above effect. The petition proceeds, "wherefore the judgment of the said justice of the peace having been not in accordance with the intent and meaning of the Act of Assembly approved July 9, 1919, P. L. 823, your petitioner prays your honorable court to grant your petitioner an appeal from the judgment rendered by the said justice of the peace."

There is no charge of corruption or partiality, but the petition indirectly suggests that the justice held that, upon this state of facts, the defendant was guilty, and were such the case, it might present a doubtful legal question. The transcript of the justice, filed in answer to the rule, tells a different story. The official record of the justice shows a memoranda of the evidence of each witness, from which it appears that there was a dispute over this deer, which was claimed by Diana, Hayes and McKnight, as averred in the petition, though the notes of evidence show that Hayes then denied claiming the deer. Six witnesses, including Leo McKnight, testify that Hayes claimed the deer. Four witnesses swore that the deer was awarded by Keating to Hayes; one witness swears it was awarded to Hayes and McKnight; five witnesses, including Keating, swore it was awarded to McKnight, and one other witness, Reasinger, swears that Keating told him he awarded it to Hayes. It thus definitely appears that there was a basic dispute on a question of fact, namely, to whom was the deer awarded at the time of the killing. On this question the justice had to pass; he had the witnesses before him while the matter was of recent occurrence, and the justice is himself an experienced hunter, eminently qualified to ascertain the true facts. The alleged "custom of hunters" must have become a custom very recently since the writer was hunting, as it is not the old rule of the woods, but absolutely inconsistent with the old code. Whatever might be the ruling of the justice on the legal question indicated by the petitioner, which is not stated at all in the record, and only inferentially in the petition, the evidence was amply sufficient to sustain the finding of the justice.

The conditions which must exist to justify the granting of an appeal in case of summary conviction are definitely established. True, an appeal lies in the discretion of the court, but this is a judicial discretion, the limitations of which have been stated for our guidance by the Superior Court in Thompson v. Preston, 5 Pa. Superior Ct. 154: "Ordinarily an appeal should not be permitted if the party desiring it has had an opportunity to fully and fairly present his case before the magistrate, unless a doubtful legal question is involved or there is something to indicate oppression, corruption or disregard of law on the part of the magistrate, or after-discovered evidence which would justify a new trial, under the well-known rules relating to new trials for that cause. Neither article v, section 14, of the Constitution, nor the Act of 1876, which was passed to carry it into effect, contemplates that an appeal shall be allowed merely because the party desiring it is dissatisfied with the result of the trial before the magistrate, as is the case with most defeated litigants, and cheers himself with hopes of better success in the next encounter." This was repeated in Com. v. Hendley, 7 Pa. Superior Ct. 356, and in Com. v. Spotts, 45 Pa. Superior Ct. 100. That the wording of the constitutional provision was designed to restrict appeals in these cases appears in McGuire v. Shenandoah, 109 Pa. 613, and in various subsequent decisions of the Supreme Court.

3 D. & C.

The matter came before this court at various times in the past, and, to the knowledge of the writer, this court has for at least thirty years steadfastly adhered to the rule of Thompson v. Preston, 5 Pa. Superior Ct. 154. The position was stated by Judge Smith in Com., to use, v. Stoltz, No. 202, December Term, 1905, as follows: "The cause shown must be violative of some legal principle, some misconduct or oppression which would appeal to the court to grant a further and fairer hearing." If this case stood purely on a definite legal question, and it appeared probable that the judgment of the justice was violative of a legal principle, the appeal should be allowed, but as the case stands, even if any legal question were decided favorably to the defendant, the court would be then obliged to pass upon disputed facts, the evidence concerning which has been fully heard by a competent tribunal, and we see no reason why we should depart from the salutary practice long established in this court conforming to the direction of the Supreme and Superior Courts.

It is not necessary that we should decide the precise legal question which the defendant seeks to raise, but we have been asked by hunters to indicate the law on certain points as a matter of public information. And we, therefore, say, as an academic statement of law, that a hunter who takes part in the shooting of a deer under such a state of facts that he claims the deer, which is awarded by some person agreed upon to another, where he proceeds to kill another deer is acting at his peril, as he is not protected by the award of the first deer to another, nor is there any existing custom recognized by the law that the person in possession of the deer at the time of its death is the one who killed it. In every case the question is one of fact, to be decided on the facts of the individual case, and it is to be incidentally noted that the policy of the law on the subject is to restrict killings. Precisely what might be the result and how many persons would be held to have killed a deer where the animal ran in front of some bullet in a general fusilade remains yet to be determined and is not material now.

Now, Jan. 4, 1923, rule to show cause why appeal should not be allowed is discharged, at the cost of the petitioners.

From John M. Urey, Clearfield, Pa.